863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leroy G. ALLEN, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-4146.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1988.
 
 Before LIVELY, DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The petitioner, a sixty-eight year old former coal miner, seeks review of a decision of the Benefits Review Board of the Department of Labor denying his claim for black lung disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Secs. 901 et seq. For the following reasons, we shall affirm the board's decision.
 
 
 2
 * Petitioner was born in 1920. He has a third-grade education. Social Security records show that he worked in coal mines off and on between 1938 and 1950, for a total of eight years of employment. Petitioner has testified that he also worked in the coal mines from 1936 to 1938, assisting his father.
 
 
 3
 From 1950 to 1984 petitioner worked as a solderer and brazer. He says he had to quit his job in 1984 because of chronic shortness of breath. At his benefits hearing in January of 1986, petitioner testified that he couldn't breathe in either winter or summer and that he had a chronic, phlegm-producing cough. He smoked for forty years, but quit in 1969.
 
 II
 
 4
 The first question presented is whether the agency erred in concluding that petitioner did not have the ten years of coal mine work necessary to invoke the interim presumption of 20 C.F.R. Sec. 727.
 
 
 5
 The administrative law judge found that in addition to the eight years of coal mining employment demonstrated by social security records, petitioner had worked part-time in 1936 and 1937. Although petitioner's testimony is not entirely clear on this point, it appears that he worked an average of two to three days per week during this period. The administrative law judge credited him with one year of pre-social security coal mine employment, for a grand total of nine years.
 
 
 6
 Petitioner argues that it was his testimony that he worked "roughly three days a week" in 1936 and 1937, or 156 days per year. Because 20 C.F.R. Sec. 718.301(b) establishes 125 days as a working year for purposes of determining the length of a coal miner's employment, petitioner argues, he should be able to claim both 1936 and 1937 as full years of coal mine employment, and hence should be able to invoke the presumption of disability due to pneumoconiosis prescribed by 20 C.F.R. Sec. 727.
 
 
 7
 We disagree. Given the ambiguity in petitioner's testimony, we cannot say that the administrative law judge was required to find that petitioner had worked two full years.
 
 III
 
 8
 Because petitioner cannot invoke the Sec. 727 presumption, we must consider whether there was substantial evidence to support the determination that he was not disabled due to pneumoconiosis under the standards of 20 C.F.R. Sec. 410.414. Pertinent here are Sec. 410.414(a), allowing for a finding of disability due to pneumoconiosis on the basis of x-ray, biopsy, or autopsy evidence, and Sec. 410.414(c), allowing for a finding of disability due to pneumoconiosis if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment arising out of coal mine employment.
 
 
 9
 Several x-ray readings are in evidence. Four are negative for pneumoconiosis and two are positive. Neither of the positive readings was made by a radiologist or B-reader; two of the four negative readings were by board-certified radiologists, on the other hand, and three of the four were B-readers. Given these numbers, there was certainly substantial evidence to support the administrative law judge's conclusion that the x-ray evidence did not show that petitioner has pneumoconiosis.
 
 
 10
 Petitioner suggests that the evidence shows "statutory pneumoconiosis," because emphysema is a chronic pulmonary disease that qualifies under the regulatory definition if it arises from coal mine employment. Shonborn v. Director, OWCP, 8 BLR 1-434 (1986). The problem with this argument is that there is no evidence that petitioner's emphysema arose from his coal mine employment, as opposed to his forty years of cigarette smoking.
 
 IV
 
 11
 The "other medical evidence" is mixed. The strongest evidence supporting petitioner's claim of pneumoconiosis consist of two reports, one from 1973 and one from 1980, by Dr. Sheldon Domm. In 1973 Dr. Domm conducted pulmonary function studies which he interpreted as showing "obstructive ventilatory impairment, severe." In 1980, on a "report of physical examination" form used by the Department of Labor for black lung claims, Dr. Domm diagnosed "coal workers pneumoconiosis." (On a different part of the form, however, he wrote "lungs' breath sounds clear").
 
 
 12
 Another 1980 medical report, by Dr. Swann, describes an arterial blood gas study, performed at rest, that showed "minimal hypoxemia." (Petitioner refused to have an arterial blood gas study done during exercise.) Chest x-rays showed no evidence of occupational dust disease, according to Dr. Swann. His most serious diagnosis was hypertension.
 
 
 13
 In this sort of conflict, we ought to give great weight to the administrative law judge's determination of credibility. Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir.1986). The administrative law judge appropriately discounted Dr. Domm's findings because of their internal inconsistency and because they ignore petitioner's forty-year smoking habit as a possible cause of his problems. In addition, a 1981 ventilatory study, conducted by Dr. Bedwell, showed no significant deterioration in petitioner's ventilatory capacity compared to studies conducted in the early 1970s. Pneumoconiosis is a degenerative disease, and Dr. Bedwell's study tends to support Dr. Swann's findings.
 
 
 14
 AFFIRMED.